UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ENTERRA ENERGY, LLC | * | CIVIL ACTION No. 06-9217 |
| | * | (ALL CASES) |
| VERSUS | * | |
| | * | SECTION "C" |
| WADI PETROLEUM, INC. | * | |
| AND | * | JUDGE BERRIGAN |
| BRAMMER ENGINEERING, INC. | * | |
| * * * * * * * * * * * * * * * * * * * * * * * | | MAGISTRATE KNOWLES |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Defendants and Counter-Claimants Wadi Petroleum, Inc. ("Wadi") and Brammer

Engineering, Inc. ("Brammer"), move for summary judgment dismissing the claims asserted by

Plaintiff enTerra Energy, L.L.C. (enTerra), and granting Wadi and Brammer's request for

declaratory judgments that enTerra is in non-consent status pursuant to the applicable Joint

Operating Agreements, and request for a declaratory judgment ordering enTerra to sign and

execute the necessary document assigning to Wadi 15% of its interest in well no. State Lease

18076 #2.

I.      BACKGROUND

The parties in this consolidated action are parties to two Joint Operating

Agreements ("JOA's") for the exploration and development of certain oil and gas leases.[1]  Wadi

---

[1]       *See* Joint Operating Agreement covering the "Bayou Perot Prospect", attached hereto as Exhibit "A"; Joint Operating Agreement covering "Prospect 87 South", attached hereto as Exhibit "B".  The plaintiff asserted in both of its Complaints that it has entered into these Joint Operating Agreements with Wadi and Brammer.

is the operator named in the JOA's, and Brammer is named as Wadi's agent operator.  enTerra is one of several non-operating parties.

Plaintiff enTerra's consolidated complaints address two separate wells: nos. Louisiana Delta Farms #2 ("LDF #2") and State Lease 18076 #2 ("SL 18076 #2").  enTerra claims that it was wrongfully declared a non-consenting party in both wells, and as a result, it has been deprived of revenues from those wells.  Wadi and Brammer deny these claims, and have counter-claimed that considering the applicable provisions of the two JOA's between the parties and the facts of the case, enTerra was in non-consent status under the JOA's and is therefore subject to a 500% penalty on those wells.  Further, in regards to well no. SL 18076 #2, Wadi and Brammer have counterclaimed that enTerra has agreed to assign 15% of its interest in that well to Wadi, and have requested declaratory judgment in their favor ordering enTerra to sign and execute the necessary document assigning this 15% interest to Wadi.

## II.    LAW AND ARGUMENT

### A.    Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law, summary judgment should be rendered.   If the movant meets this burden, the non-movant must then demonstrate specific facts showing there is a genuine issue of material fact.[2]  The movant is entitled to summary judgment if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial."[3]  There is no genuine issue as to any material fact in

---

[2]    *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986).
[3]    *Id.* at 322.

-2-

such a situation because "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."[4]

The non-movant's burden is not satisfied with some metaphysical doubt as to the material facts.[5] A genuine issue of fact is likewise not established by conclusory allegations,[6] unsubstantiated assertions,[7] or by only a scintilla of evidence.[8] Although the court must resolve factual controversies in favor of the non-movant, it must do so only when there is an actual controversy - when both parties have submitted evidence of contradictory facts.[9] A court may not, in the absence of proof, assume the non-movant could or would prove the necessary facts.[10]

The interpretation of an unambiguous contract is an issue of law for this Court.[11] When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.[12] "A contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight."[13] In a contract interpretation case, "only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment."[14]

---

[4]      *Id.* at 323.
[5]      *Matsushita Elec. Inc. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct 1348,1356 (1986).
[6]      *Lujan v. National Wildlife Federation*, 497 U.S. 871, 880, 110 S.Ct. 3177, 3180 (1990).
[7]      *Hopper v. Frank*, 16 F.3d 92, 97-98 (5th Cir. 1994).
[8]      *Davis v. Chevron, U.S.A., Inc.*, 14 F.3d 1082, 1086-1088 (5th Cir. 1994).
[9]      *Little v. Liquid Air Corp.*, 37 F.3d 1069,1075 (5th Cir. 1994).
[10]     *Id.*; *see also Lujan*, 110 S.Ct. at 3188.
[11]     *Amoco Prod. Co. v. Texas Meridian Res. & Exploration Inc.*, 180 F.3d 664, 669 (5th Cir. 1999).
[12]     La. Civ. Code art. 2046.
[13]     *Amoco Prod. Co.*, 180 F.3d at 669 (citations omitted).
[14]     *Id.*

**B.      Non-Consent Status Under the Joint Operating Agreements for Failure to Pay Costs.**

The words and meaning of the JOA's are clear and explicit.  The JOA's used by the parties are form agreements widely accepted and used for decades in the oil and gas industry. enTerra's suit is based upon its own erroneous interpretation of the JOA's.

The JOA's at issue obligate enTerra, as a non-operating party, to pay its share of advance costs and expenses incurred by Wadi and Brammer.[15]  The JOA's provide that Wadi and Brammer may invoice enTerra for these costs and that enTerra must pay the advanced costs within fifteen days of receipt of an invoice for the same.[16]

Article XV of the JOA's, entitled "Deemed Non-Consent for Defaulting Payment," is the central article in this dispute.  In the event of a conflict between Article XV and any other provision of the JOA's, Article XV controls.[17]  Article XV reads, in pertinent part:

> if any party to this agreement shall fail to pay its share of costs and expenses incurred and/or fails to pay any advance invoice as provided for in Article VII.C herein for cost to be incurred in operations of the Contract Area for a period of thirty (30) days from the date of receipt of Operator's invoice therefore, Operator may notify the affected party of its default by certified mail, return receipt requested, and if such party fails to cure the default within ten (10) days from the date of receipt of Operator's notice, by payment in full of the invoices for operating costs which have been due for more than thirty (30) days, at Operator's election, the affected party shall be deemed in non-consent status and for so long as the affected party remains in default they shall have no further access to the Contract Area or information obtained in connection with operations hereunder and shall not be entitled to vote on any matter hereunder, as long as the invoices remain unpaid.[18]

---

15      *See* Exhibits A & B, at Art. VII.(C), at p. 9 ll. 54-61.
16      *Id.*
17      *See* Exhibits A & B, at XV(I), which provides: "In the event of a conflict between the provision of the Article XV and any other provision of this Operating Agreement, the provision of this Article XV shall control and prevail."
18      *See* Exhibits A & B.

The words of the JOA's clearly obligate enTerra to pay its share of costs and expenses incurred within thirty days of receipt of an invoice.  If enTerra fails to pay the invoice after thirty days, Wadi or Brammer may notify enTerra of the default by certified mail, return receipt requested. If enTerra fails to cure the default within ten days of that notice, Wadi or Brammer may elect to deem enTerra to be in non-consent status.

Alternatively, if enTerra is in default as to any amount owed to Wadi or Brammer after a proposed JOA operation is commenced, it may also be deemed to be in non-consent. Article XV(H) continues:

> As to any proposed operation in which it otherwise would have the right to participate, such party shall have the right to be a Consenting Party therein *only if it pays the amount it is in default before the operation is commenced*; otherwise, at Operator's election, it *automatically* shall be deemed a Non-Consenting Party to that operation.  (Emphasis added).

Therefore, enTerra has a right to consent to a proposed operation only if it has paid all amounts in default before the operation is commenced.  This part of Article XV(H) also establishes that Wadi and Brammer have the right to apply payments received from enTerra to the oldest invoices for which enTerra is in default.  Wadi and Brammer are not restricted to apply payments received from enTerra to the advanced drilling costs of a proposed operation.  As the JOA's clearly state, not only must enTerra must pay the advanced costs of a particular proposed well to be a consenting party in that well, but also must pay all amounts for which it is in default before the operation is commenced.  If enTerra is found to be in non-consent status, the JOA's provide that enTerra is subject to 500% penalty of all costs and expenses of that well which would have been chargeable to enTerra party if it had participated in the well.[19]

---

[19]    *See* Exhibits A & B, Article VII(B)(2)(b), at p.6.

C.     **enTerra is in Non-Consent Status as to Well No. SL 18076 #2 and Agreed to Assign 15% of its Interest in that Well to Wadi.**

i.     **Factual Background**

enTerra is a non-operating party to the JOA covering the "Bayou Perot Prospect", located in Lafourche and Jefferson Parishes, Louisiana.[20]  On February 28, 2006, Brammer billed enTerra for certain drilling costs, including the costs of drilling of well no. SL 18076 #1, which was drilled pursuant to the Bayou Perot JOA.[21]  Many of the costs on the February 28 invoice had previously been billed to enTerra, and were costs for which enTerra was already several months delinquent.

On March 30, 2006, after enTerra had repeatedly failed to satisfy negotiated payment plans, broken assurances to pay current on past due amounts, and had been in payment delinquency for eight months, Brammer notified enTerra by certified mail, return receipt requested, that enTerra had failed to pay the entire amount of the February 28, 2006 invoice.[22]  In this March 30 letter, Brammer informed enTerra that pursuant to the Bayou Perot JOA, if full payment of the account was not received within ten days of the letter, Brammer had the right to place enTerra in non-consent status.[23]  Brammer did not receive full payment from enTerra within the ten day deadline.

On August 24, 2006, Brammer notified the parties to the JOA of its proposal to drill well no. SL 18076 #2 in the Bayou Perot Prospect pursuant to the terms of the JOA.[24] Notice was also given to the parties that by electing to participate in the drilling of the well they

---

[20]     *See* Exhibit A.
[21]     *See* Invoice from Brammer to enTerra dated February 28, 2006, attached hereto as Exhibit "C".
[22]     *See* Correspondence from Brammer to enTerra dated March 30, 2006, attached hereto as Exhibit "D".
[23]     *Id.*
[24]     *See* Proposal to Drill from Brammer dated August 24, 2006, attached hereto as Exhibit "E".

were agreeing to a five day payment term for cash call invoices.[25]  Wadi notified Brammer of its election to participate in the drilling of well no. SL 18076 #2 on August 28, 2006.[26]  enTerra notified Brammer of its election to participate in the drilling of well no. SL 18076 #2 on August 30, 2006.[27]

On September 1, 2006, Wadi informed all non-operating parties that a rig was moving onto location for well no. SL 18076 #2, and that a cash call invoice for pre-drilling costs was being faxed from Brammer.[28]  On the same day, Brammer notified enTerra that a past due balance of $526,450.09 from previous invoices remained on its account.[29]  Brammer also sent the cash call invoice to enTerra on the same day, billing enTerra for its portion of the drilling costs incurred for well no. SL 18076 #2.[30]  The cash call correspondence noted that payment was due within 24 hours.

On September 8, 2006, Brammer requested payment of amounts due past 60 days, totaling $356,876.04, as well as full payment of the September 1 cash call on well no. SL 18076 #2, and  Brammer demanded full payment of these past due amounts on or before September 12, 2006.[31]  Mr. Mark Anderson, Joint Interest Billing Manager of Brammer, also informed Bryan Rose of enTerra by telephone conference that any funds received from enTerra would be applied

---

[25]       *Id.*

[26]       *See* Election Ballot and Authority For Expenditure executed by Wadi, dated August 28, 2006, attached hereto as Exhibit "F"

[27]       *See* Exhibit E.

[28]       *See* E-mail Correspondence from Wadi to Parties, dated September 1, 2006, attached hereto as Exhibit "G".

[29]       *See* Correspondence and Invoice sent from Brammer to enTerra dated September 1, 2006, attached hereto as Exhibit "H".

[30]       *See* Fax and Cash Call Invoice from Brammer enTerra dated September 1, 2006, attached hereto as Exhibit "I".

[31]       *See* E-mail Correspondence from Brammer to enTerra dated September 8, 2006, attached hereto as Exhibit "J".

Case 2:06-cv-09217-HGB-DEK   Document 28-1   Filed 08/28/07   Page 8 of 18

to the oldest past due amount from previous invoices before being applied to the amount due for well no. SL 18076 #2.[32]

Also on September 8, 2006, Bryan Rose of enTerra called Kevin B. Dice, Vice President of Wadi, to discuss payment of this overdue amount. Mr. Bryan Rose agreed with Mr. Dice that he would immediately send checks to Brammer in order to pay amounts overdue. Mr. Bryan Rose also informed Mr. Dice that enTerra would like to participate in well no. SL 18076 #2, but would get back to Mr. Dice regarding the exact percentage of interest enTerra wanted to retain in the well.[33] On September 11, 2006, Mr. Bryan Rose confirmed with Mr. Dice that enTerra wished to reduce its participation in well no. SL 18076 #2 from 25% to 10%, making the remaining 15% available to other non-operating parties. Mr. Bryan Rose also agreed that enTerra would sign a written assignment reflecting this oral agreement.[34]

Operations on well no. SL 18076 #2 were commenced on September 12, 2006. Drilling was completed on October 11, 2006, and the well began producing on the same day.[35]

Although the invoices sent by Brammer requested that enTerra send payments directly to Brammer,[36] enTerra instead mailed two handwritten checks to Wadi on September 13, 2006.[37] One check was made for $146,208.00 and the other was for $356,876.04.[38] Wadi immediately forwarded these checks to Brammer,[39] and both checks were deposited by Brammer on September 14, 2006.[40]

---

[32]    *See* Affidavit of Mark Anderson, attached hereto as Exhibit "K".
[33]    *See* Affidavit of Mr. Kevin Dice, attached hereto as Exhibit "L".
[34]    *Id.*
[35]    *See* Affidavit of Judy Farrar, attached hereto as Exhibit "M".
[36]    *See* Exhibits C, D, I &J.
[37]    *See* Exhibit M.
[38]    *See* Check Nos. 4691 & 4692 dated September 11, 2006, attached hereto as Exhibit "N".
[39]    *See* Exhibit M.
[40]    *See* Exhibit K.

Brammer was notified by its bank that enTerra's check no. 4691 for $146,208.00 had cleared and was deposited.[41]  This payment was applied to amounts for which enTerra was in default, not the amount due pursuant to the drilling of well no. SL 18076 #2.[42]   Check no. 4692 for $356,876.04 was presented for payment by Brammer's bank on two occasions. Brammer received notifications on September 19, 2006 and again on September 22, 2006 that check no. 4692 was rejected by enTerra's bank both times because of insufficient funds.[43]

On September 22, 2006, almost six months after enTerra was first notified it must pay amounts due in full within ten days or else be placed in non-consent, Brammer notified enTerra that because of enTerra's failure to pay the full amount due pursuant to the outstanding invoices, it was deemed in non-consent status in the operations of well no. SL 18076 #2.[44]  At that point, enTerra owed Wadi and Brammer $1,083,205.10.  enTerra was also informed that its check for $356,876.04 was returned twice for insufficient funds, and its payment of $146,208.00 was to be applied to the oldest invoices first, not the costs of well no. SL 18076 #2.[45]

On September 28, 2006, Wadi delivered by certified mail to enTerra a written assignment of enTerra's 15% interest to Wadi, pursuant to the oral agreement reached between enTerra and Wadi on September 11, 2006, that enTerra would relinquish to Wadi 15% of its 25% interest in well no. SL 18076 #2 and the related leasehold.[46]   enTerra refused to accept the

---

[41]       *See* Exhibit K.
[42]       *See* Exhibit K.
[43]       *Id.; see also* Notices of Deposited Checks Returned as Unpaid, dated September 19 & 22, 2206, attached *in globo* hereto as Exhibit  "O".
[44]       *See* E-mail Correspondence from Brammer to enTerra dated September 22, 2006, attached hereto as Exhibit "P".
[45]       *Id.*
[46]       *See* Correspondence from Wadi to enTerra and attached Assignment of Interest dated September 28, 2006 attached hereto as Exhibit "Q".

package containing the written assignment, and to date, has not executed the assignment.[47]

> **ii.    Argument**
>
> **a.    Pursuant to the JOA Between the Parties, enTerra is in Non-Consent on Well No. SL 18076 #2.**

As established by the undisputable facts, enTerra was rightfully placed in non-consent as to well no. SL 18076 #2 pursuant to Article XV of the Bayou Perot JOA.  Article XV provides that enTerra must pay its share of costs and expenses within 30 days of receiving invoices for those amounts.  It received an invoice for costs and expenses on February 28, 2006, and many of these costs were previously billed and several months delinquent.[48]

Article XV reads that if enTerra fails to pay such an invoice within 30 days, Wadi or Brammer may notify enTerra of the default by certified mail, return receipt requested. Brammer complied with this requirement on March 30, 2006.[49]  This letter informed enTerra that if full payment of the account was not received within ten days of the letter, Brammer had the right under the JOA to place enTerra in non-consent status.[50]  Brammer did not receive full payment from enTerra within the ten day deadline.  Wadi and Brammer elected not to deem enTerra in non-consent status at that time, in an attempt to resolve the overdue invoices amicably.

On September 22, 2006, almost six months after enTerra was notified by Brammer that it must pay amounts due in full within ten days or else be placed in non-consent, Brammer notified enTerra that because of enTerra's failure to pay the full amounts due pursuant

---

[47]    *See* Exhibit M.
[48]    *See* Exhibit C.
[49]    *See* Exhibit D.
[50]    *Id.*

to the outstanding invoices, it was deemed in non-consent status in the operations of well no. SL 18076 #2.[51]  At that point, enTerra owed Wadi and Brammer $1,083,205.10.

Article XV also allows Wadi and Brammer to place enTerra in non-consent for its failure to pay amounts owed before the operations for well no. SL 18076 #2 were commenced. Operations on well no. SL 18076 #2 were commenced with the well being spudded on September 12, 2006.   The well was completed on October 11, 2006, and the well began producing on the same day.[52]  Brammer did not receive payment by the commencement date of September 12.  It was not until September 14 that Brammer received any payment, which was only a partial payment for past due invoices.  Because enTerra was still in default on several invoices, Artcile XV of the JOA gave Wadi and Brammer the right to declare enTerra in non-consent for that reason.

Wadi and Brammer did receive some payment on these past due invoices in the form of two checks from enTerra on or about September 13, 2006.   The checks were mailed to Wadi when they should have been sent to Brammer, but Wadi forwarded the checks to Brammer and Brammer deposited both the checks on September 14, 2006.[53]  The larger check, no. 4692 for $356,876.04, was rejected for insufficient funds.  Brammer's bank presented the check for payment again on September 22, 2006, but the check was rejected again because of insufficient funds.[54]

enTerra would have this court believe that some oral agreement existed between the parties to hold one or more of these checks and only deposit the checks after enTerra

---

[51]     *See* Exhibit P.
[52]     *See* Exhibit M.
[53]     *See* Exhibit K & M.
[54]     *Id.; see* Exhibit O.

transferred funds from another account to cover the amount of the check.[55]   Neither Wadi nor

Brammer agreed to hold check no. 4692 for $356,876.04 until enTerra could transfer funds from

another account to cover the amount of the check.[56] Even assuming *arguendo* that such an

agreement did exist between the parties, it has no bearing on enTerra being placed in non-

consent as to well no. SL 18076 #2.  enTerra was facing non-consent status for payments in

default long before its check bounced twice for insufficient funds. Further, enTerra's check

would have bounced even if Brammer had held the check until September 19.  Brammer's bank

did not present the check for payment a second time until September 22.  The second time the

larger check was presented for payment and rejected by enTerra's bank was after the date that

enTerra claims it had initially requested the check be presented for payment.

enTerra also claims that its payment of check no. 4691 of $146,208.00 was

wrongfully applied to the oldest amounts past due pursuant to the JOA, not the amount due

pursuant to the drilling of well no. SL 18076 #2.  enTerra was not only placed on notice that

Wadi and Brammer would be applying these amount to the oldest amounts past due,[57] but the

JOA also establishes that Wadi and Brammer have the right to apply payments to the oldest

invoices first, and are not restricted to apply payments to the advanced drilling costs of a

proposed operation.  The JOA provides that enTerra must pay "the amount it is in default before

the operation is commenced" in order to be a consenting party.[58]  Brammer properly applied the

$146,208.00 to amounts which were in default previous to the advanced costs of drilling for well

no. SL 18076 #2.

---

[55]     *See* E-mail Correspondence from enTerra to Brammer dated September 22, 2006, attached hereto as Exhibit "R".
[56]     *See* Exhibit K, L & M.
[57]     *See* Exhibit J.
[58]     *See* Exhibit A at Art. XV(H).

There is no genuine issue of material fact that enTerra failed to pay overdue invoices for more than eight months; that Wadi and Brammer properly notified enTerra that it would be placed in non-consent for a failure to pay these invoices; and that enTerra failed to pay the overdue invoices before operations on well no. SL 18076 #2 were commenced.  The JOA clearly provides that Wadi and Brammer were entitled to place enTerra in non-consent as to well no. SL 18076 #2.  Wadi and Brammer are entitled to a judgment as a matter of law that enTerra is in non-consent as to well no. SL 18076 #2.

### b.   enTerra Agreed to Assign 15% of its Interest in Well No. SL 18076 #2 to Wadi and Brammer.

On September 8, 2006, Brammer requested payment of amounts due past 60 days, totaling $356,876.04, as well as full payment of the September 1 cash call on well no. SL 18076 #2.[59]  On the same day, Mr. Bryan Rose of enTerra called Kevin B. Dice, Wadi's Vice President, to discuss payment of this overdue amount.   Mr. Bryan Rose agreed with Mr. Dice that he would immediately send payment for amounts past due.  Mr. Bryan Rose also informed Mr. Dice that enTerra would like to participate in well no. SL 18076 #2, but that enTerra would likely reduce its interest in the well due to its cash flow problems.  Mr. Bryan Rose agreed that he would get back to Mr. Dice regarding the exact percentage of interest enTerra wanted to participate in the well.[60]  On September 11, 2006, Mr. Bryan Rose confirmed with Mr. Dice that enTerra wished to reduce its participation in well no. SL 18076 #2 from 25% to 10%, making the remaining 15% available to other parties.  Mr. Bryan Rose also agreed that enTerra would take care of any needed paperwork reflecting this oral agreement and to complete the assignment of enTerra's interest.[61]   Wadi distributed that 15% interest to other interested parties in reliance of

---

[59]    *See* Exhibit J.
[60]    *See* Exhibit L.
[61]    *Id.*

that oral agreement.  For example, on September 21, Eckard Land & Acquisition Ltd. agreed to take 12.75% of enTerra's former interest.[62]

On September 28, 2006, Wadi delivered by certified mail to enTerra a written assignment of enTerra's 15% interest to Wadi, pursuant to the oral agreement reached between enTerra and Wadi on September 11, 2006, that enTerra would relinquish to Wadi 15% of its 25% interest in well no. SL 18076 #2 and the related leasehold.[63]   enTerra refused to accept the package containing the written assignment, and to date, has not executed the assignment.[64]

Not only did enTerra orally agree to assign this 15% interest, but its actions confirm that it agreed to make the assignment.  The original cash call for the advanced costs of well no. SL 18076 #2 provided that enTerra owed $365,520.00.[65]   That amount is 25% of $1,462,080.00, the total advanced drilling costs for well no. SL 18076 #2.  However, the check that enTerra itself has claimed that it sent for payment of the advanced costs of well no. SL 18076 #2, check no. 4691, was made out for $146,208.00, which is 10% of the advanced costs.[66] This payment reflects recognition by enTerra that it had agreed to reduce its interest in the well from 25% to 10%, assigning the rest to any interested parties.

There is no issue of material fact that enTerra agreed to release 15% of its interest in well no. 18076, reducing its total interest in the well to 10%.  Wadi and Brammer seek summary judgment on its claim that enTerra must be made to sign and execute the written assignment of its released interest.

---

[62]        *See* Letter of Intent dated September 21, 2006, attached hereto as Exhibit "S".
[63]        *See* Exhibits M & Q.
[64]        *See* Exhibit M.
[65]        *See* Exhibit I.
[66]        *See* Exhibit N.

### D.      enTerra is in Non-Consent Status as to Well No. LDF #2.

#### i.      Factual Background

On February 8, 2006, Wadi entered into a JOA with several non-operators, including enTerra.  The prospect covered by the February 8, 2006 JOA is "Prospect 87 South" located in Lafourche Parish, Louisiana.  Brammer was named in the JOA as the agent operator for Wadi.[67]

On September 11, 2006, Brammer notified the parties to the Prospect 87 South JOA that it would be drilling the Initial Well on Prospect 87 South, well no. LDF #2.[68]  On September 20, 2006, Brammer sent enTerra an invoice for advance costs totaling $451,579.50 incurred for the drilling of well no. LDF #2.[69]  The invoice noted that payment was due within 15 days, or on October 5, 2006.

On September 27, 2006, Wadi sent by e-mail and by certified mail, return receipt requested, a notice to enTerra reminding enTerra that the advanced costs for well no. LDF #2 were due on October 5, 2006.[70]  Wadi also notified enTerra that Wadi had not yet received a response as to whether enTerra intended to participate in the well.  On October 3, 2006, Brammer notified enTerra by e-mail and by certified mail, return receipt requested, that payment was still due for the LDF #2 costs and that if payment was not received by October 5, 2006. enTerra would not be able to participate in the drilling of the well no. LDF #2.[71]

---

[67]      *See* Joint Operating Agreement covering "Prospect 87 South", attached hereto as Exhibit "B"
[68]      *See* E-mail Correspondence from Wadi to enTerra dated September 11, 2006, attached hereto as Exhibit "T"; *see* Correspondence from Wadi to enTerra dated September 12, 2006, attached hereto as Exhibit "U".
[69]      *See* Correspondence and Invoice from Brammer to enTerra dated September 20, 2006, attached hereto as Exhibit "V".
[70]      *See* Correspondence from Wadi to enTerra dated September 27, 2006, attached hereto as Exhibit "W".
[71]      *See* Correspondence from Brammer to enTerra dated October 3, 2006, attached hereto as Exhibit "X".

GAMDE-NO:203571

Operations on well no. LDF #2 commenced on September 28, 2006.  Well no. LDF #2 reached total depth on October 11, 2006.[72]  Payments demanded from enTerra were not received.  On October 10, 2006, Wadi notified enTerra by e-mail as well as certified mail, return receipt requested, that enTerra was deemed to be in non-consent as to well no. LDF #2 for a failure to pay amounts due before the operation was commenced.[73]  enTerra did not send notice to Wadi that it wished to participate in the LDF #2 until October 12, 2006, after the well had reached its total depth.[74]

### ii.    Argument

As previously established herein, the Prospect 87 South JOA provides that enTerra is entitled to be a consenting party in an operation pursuant to the JOA only if enTerra has paid its share of the advanced costs of the operation before the JOA operation is commenced.[75]  If a party fails to pay such advanced costs before the operation is commenced, the operator may elect to automatically deem the party non-consenting to that operation.[76]

Operations on well no. LDF #2 were commenced on September 28, 2006, and the well reached total depth on October 11, 2006.  enTerra failed to pay the advance costs for LDF #2 by the commencement date, and therefore, was deemed to be in non-consent by Wadi and Brammer.

enTerra has claimed that it had until October 12, 2006 to decide whether to participate in well no LDF #2, and that it would not have to pay advance costs on that well until fifteen days after it consents to participation in the drilling of the well.  There is absolutely no legal or contractual support for this argument.  Well LDF #2 was deemed to be the initial well

---

[72]    *See* Exhibit M.
[73]    *See* Correspondence from Wadi to enTerra dated October 10, 2006, attached hereto as Exhibit "Y".
[74]    *See* Correspondence from enTerra to Wadi  dated October 12, 2006, attached hereto as Exhibit "Z".
[75]    *See* Exhibit B at Art. XV(H) at p. 14B.
[76]    *Id.*

for the Prospect 87 South JOA,[77] and as such, all parties were obligated to participate in that well.[78]  It is not a material fact when enTerra sent in its election to participate, because it was obligated to participate in the drilling of LDF #2 regardless of when it sent the formal notice of consent to Wadi.

There is no issue of material fact whether enTerra is in non-consent with regard to well LDF #2.  enTerra was in default on its payments for advanced costs after the operation of LDF #2 was commenced, and Wadi and Brammer declared enTerra to be in non-consent on that well for that very reason.

## III.   CONCLUSION

There are no genuine issues of material fact relative to the claims by Wadi and Brammer in this case, and therefore Wadi and Brammer request summary judgment in their favor granting their requests for declaratory judgments.  Pursuant to the JOA's between the parties, enTerra is in non-consent status on wells nos. SL 18076 #2 and LDF #2.   Therefore, enTerra is subject to a 500% penalty on those wells.  Further, in regards to well no. SL 18076 #2, Wadi and Brammer have shown that enTerra agreed to assign 15% of its interest in that well to Wadi, and request summary judgment in their favor ordering enTerra to sign and execute the necessary document assigning this 15% interest to Wadi.  Wadi and Brammer also request summary judgment in their favor dismissing the claims asserted by Plaintiff enTerra with prejudice.

---

[77]     *See* Exhibit U.
[78]     *See* Exhibit B at Art. VI(A), at p.4

Respectfully submitted,

   /s/ Phillip J. Antis, Jr.
Loulan J. Pitre, Jr., T.A. (Bar #17749)
Phillip J. Antis, Jr. (Bar #29067)
GORDON ARATA MCCOLLAM DUPLANTIS
   & EAGAN, LLP
201 St. Charles Avenue, 40th Floor
New Orleans, Louisiana 70170-4000
Telephone:  (504) 582-1111
Facsimile:  (504) 582-1121

Attorneys for Defendants, Wadi Petroleum, Inc. and
Brammer Engineering, Inc.


CERTIFICATE OF SERVICE

     I certify that, on this 28th day of August, 2007, a copy of the foregoing

Memorandum in Support of Motion for Summary Judgment was filed electronically with the

Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of

record by operation of the court's electronic filing system.

                /s/ Phillip J. Antis, Jr.