UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ENTERRA ENERGY, LLC | * | CIVIL ACTION NO. 06-9217 |
| | * | (Document applies to All Cases) |
| | * | |
| VS. | * | SECTION "C" |
| | * | |
| WADI PETROLEUM, INC. | * | JUDGE BERRIGAN |
| AND | * | |
| BRAMMER ENGINEERING, INC. | * | MAGISTRATE KNOWLES |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN OPPOSITION**
**TO MOTION FOR SUMMARY JUDGMENT**

Defendants, Wadi Petroleum, Inc. ("Wadi"), and Brammer Engineering, Inc. ("Brammer"), have attempted to impose five hundred (500%) per cent penalties on plaintiff, enTerra Energy, LLC ("enTerra"), in regards to two (2) separate wells, the State Lease No. 18076 No. 2 Well ("SL 18076 #2") and the Louisiana Delta Farms No. 2 Well ("LDF #2"). enTerra instituted Civil Action No. 06-9217 in regards to SL 18076 #2 and Civil Action No. 07-0409 in regards to LDF #2, each suit requesting declaration that the imposition of said five hundred (500%) per cent penalties was not authorized and for other appropriate relief. Wadi and Brammer answered and filed counter claims for declaratory judgments that enTerra was in non-consent status as to both wells and for judgment ordering enTerra to sign an assignment of fifteen (15%) per cent interest in SL 18076 #2 to Wadi. The actions were subsequently consolidated.

Wadi and Brammer have now filed a Motion for Summary Judgment ("MSJ") as to all claims. As we will hereinafter establish, the motion has no basis as to any issue.

## I. State Lease No. 18076 No. 2 Well

### A. Purported Oral Agreement to Assign Interest

It is quite telling that in their discussion of this issue, Wadi and Brammer fail to cite any legal authority whatsoever. They simply assert an oral agreement and request an order that enTerra be ordered to execute an assignment. Even assuming such an oral agreement was ever made, such an agreement is totally invalid and unenforceable under Louisiana law. A mineral lease is immovable property. La. R.S. 31:16 and 18. Transfers thereof must be in writing. *Hayes v. Muller*, 245 La. 356, 158 So.2d 191 (1963). As stated therein, "the parol evidence rule applies to transactions involving mineral leases, just as it does to those affecting real estate." 245 La. at 376, 158 So.2d at 198. Defendants cannot assert an oral agreement to transfer a mineral lease or an interest therein. Summary judgment obviously cannot be awarded to defendants on this issue.

### B. Purported Non-Consent Status

Defendants begin their argument by asserting that "The JOA's used by the parties are form agreements widely accepted and used for decades in the oil and gas industry." This statement is disingenuous at best. The applicable Joint Operating Agreements may be based on AAPL Form 610-1982 Model Form Operating Agreements. However, Article XV, which defendants admit to be "the central article in this dispute," is not part of said model form (which has been "accepted and used for decades"), but a non-standard addition.

2

However, before addressing the language of the JOA's, we turn to another issue totally ignored by defendants: Was enTerra a party to the "Bayou Perot Prospect" Joint Operating Agreement? Defendants simply assert that enTerra was a party. However, their own evidence is to the contrary. Defendants attached as Exhibit "A" to their MSJ the purported December 1, 2004, Joint Operating Agreement ("December JOA"). However, page 25 thereof (the signature page for Louisiana Delta Oil Company, LLC, and enTerra Energy, LLC) shows that it is from the October 21, 2004, Joint Operating Agreement between said parties. Said October 21, 2004, Joint Operating Agreement ("October JOA") is attached hereto as Exhibit "A."

The fact that enTerra was not a party to the December JOA is confirmed by the December 1, 2004, Exploration Agreement between Louisiana Delta Oil Company, LLC, and Wadi Petroleum, Inc., Betaco, L.L.C., South Bay Corporation, and Calvin Educational Fund, which is attached hereto as Exhibit "B." enTerra is not even purported to be a party to this agreement, which was the basis for the December JOA.

The notice sent to enTerra was specifically made pursuant to the December JOA to which it was not a party. Exhibit "D" to MSJ. Clearly such action does not constitute notice pursuant to the 10-21-04 JOA. Defendants have failed to show on what basis it could be so considered.

There is no showing that enTerra ever intended to become bound by the 12-1-04 JOA in place of the 10-21-04 JOA. Defendants appear to be asserting some type of presumed substitution of one contract for another. However, they have introduced no evidence of such substitution. "Novation may not be presumed." La. C.C. art. 1880. We note that there is nothing to prevent owners of interests in mineral leases from having separate operating

3

agreements with each other, but having no agreement applicable to all interest owners. *See Osborn v. Rogers*, 363 P.2d 219 (Okl. 1961).

Proper notice has been held to be essential to the imposition of non-consent penalties in Texas. *El Paso Production Co. v. Valence Operating Co.*, 112 S.W.3d 616 (Tex. App. – Houston [1 Dist.] 2003). The same rule should apply in Louisiana.

It is not undisputed that the plaintiff was a party to the December JOA. enTerra categorically denies that it was a party to said agreement. See Affidavit of David G. Rose, attached hereto as Exhibit "E." enTerra did not even learn of the existence of the December JOA until some time after sending the noted wire payment. *Id.* Therefore, summary judgment for defendants under such agreement clearly cannot be granted.

Even if enTerra were a party to the December JOA, defendants have not established liability. Paragraph H of added Article XV of such JOA provides for a non-consent status "for so long as the affected party remains in default." This provision is simply inapplicable inasmuch as full payment was made on September 26, 2006. enTerra is no longer in default. The next provision only applies to a particular situation. It states its applicability: "As to any proposed operation in which it otherwise would have the right to participate." This language clearly does not apply to an Initial Well. Article VI, paragraph A, provides that the "Operator shall commence the drilling of a well." The drilling of such well is the reason the parties entered into the agreement. They have agreed to participate. These have no "right to participate." If they had a "right to participate," but not the obligation, they could elect to go non-consent. One cannot go non-consent in the Initial Well.

The Initial Well under both the October JOA and the December JOA was the State Lease No. 18076 No. 1 Well ("SL 18076 #1"). The SL 18076 #2 was the Replacement Well for said well. The provisions for "Substitute or Replacement Wells" are found in Article XV, paragraph B, of both JOA's. The language provides for any party to "propose the drilling of a substitute or replacement well." In this instance, all "parties" (under the relevant JOA) elected to participate in the drilling of the SL 18076 #2 as the Replacement Well for the SL 18076 #1. Exhibit "C" attached hereto. The SL 18076 #2 was characterized by Wadi as a Replacement Well, rather than a "Substitute Well" in numerous conversations and e-mails. Exhibits "D," "E," and "F," attached hereto.

A Replacement Well is only to be drilled under the non-consent terms of the JOA, if any parties elect not to participate, according to Article XV, paragraph B. All parties elected to participate in the drilling of SL 18076 #2. Exhibit "C." The non-consent provisions did not apply. The SL 18076 #2 took the place of the Initial Well. It was not a "Subsequent Well." Article XV, paragraph H, is not applicable. Therefore, summary judgment cannot be granted pursuant thereto.

As we have noted, Article XV is not a standard JOA provision, although defendants have tried to characterize it as such. Wadi and Brammer have also referred to paragraph H thereof as a non-consent penalty. There is no non-consent involved. enTerra had already consented to the proposed operations under what it believed to be the October JOA. It became liable for such sums. It has now paid all of such sums. It paid all back sums owed by wire transfer on September 26, 2007. Affidavit of David G. Rose, Exhibit "E." Wadi has never returned such funds. *Id.* By such actions, Wadi and Brammer have imposed a five hundred (500%) per cent penalty for non-payment and then collected the payment. To permit such egregious conduct

5

would be to allow defendants "to have their cake and eat it too." This was never the intent of paragraph H, assuming it applies.

It has been held, and we believe properly, that the normal non-consent penalty provision in a JOA is not a penalty or liquidated damages provision. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656 (2005). Instead, such provision is "the mechanism utilized to allow the consenting parties the opportunity to recover their investments and receive defined returns from future operations." 164 S.W.3d at 664. The non-consent penalty does not constitute damages for breach of contract. The non-consenting party has "simply agreed not to participate in a return on an investment she did not make." *Id.* Therefore, such clauses are clearly enforceable.

However, paragraph H is not such a clause. It is a liquidated damages clause, which as applied by defendants, would exact an enormous penalty for a slight delay in payment of money. The imposition of such penalty is not a situation of shifting speculative financial risks. It was so held in *C. K. Oil Properties, Inc. v. Hrubetz Operating Co.*, 2002 WL 32344609 (Tex. App. – Eastland 2002). The penalty was attempted to be assessed for untimely payment of debts. The Texas Court of Appeal refused to allow such penalties to be assessed under the facts of the case.

Under Louisiana law, stipulated damages, also referred to as liquidated damages, may be modified if "they are so manifestly unreasonable as to be contrary to public policy." La. C.C. art. 2012; *Carney v. Boles*, 643 So.2d 339 (La. App. 2d Cir.), *writ denied* 648 So.2d 391 (La. 1994). We believe the instant five hundred (500%) per cent penalty for arguably being a few days late in payment (assuming that late payment was not waived) meets such test. Such penalty is manifestly unreasonable. In any event, defendants have not shown that it is undisputed that the instant penalty is not against public policy.

6

Defendants assert that whether or not they agreed with enTerra to hold the check is irrelevant. This assertion is incorrect. Obviously, there is a disputed fact as to whether there was such an agreement. David G. Rose testifies that there was such an agreement. Exhibit "E" attached hereto. Employees of defendants assert to the contrary. Defendants fail to explain how this disputed fact is not material. No basis is asserted as to why the parties could not agree to an extension of time to pay a debt. Whether there was such an agreement is clearly a disputed issue of material fact. For this reason alone, the MSJ must be denied.

## II.  Louisiana Delta Farms No. 2 Well

The LDF #2 was the Initial Well under the Prospect 87 South Joint Operating Agreement. Therefore, operations on such well do not constitute "any proposed operation in which [enTerra] otherwise would have the right to participate." Defendants have asserted no basis whatsoever to apply Article XV, paragraph H, to an Initial Well. The Initial Well can never be a "proposed operation." The summary judgment motion of defendants must be rejected as to this well. In fact, enTerra will shortly be filing its own motion for summary judgment as to such well. Furthermore, as discussed above regarding SL 18076 #2, there is a factual issue as to whether such provision is manifestly unreasonable.

We further note that even if the LDF #2 were a "proposed operation," the result would be the same. Defendants admit that enTerra was notified of its right to elect to participate by letter dated September 11, 2006, to which it timely responded on October 12, 2006. Exhibits "U" and "Z" to MSJ. Defendants have not established that the provisions in Article VII, paragraph C, for billings were complied with. enTerra was not in default. Therefore, Article XV, paragraph H, does not come into play. It only requires that a party "pay the amount it is in default before the operation is commenced." enTerra was not in default.

7

## III.  Conclusion

For all of the numerous reasons set forth herein, the Motion for Summary Judgment of defendants must be denied.

Respectfully submitted,

/s/ Thomas C. McKowen, IV
William S. Strain (LSB No. 12522), Trial Attorney
Thomas C. McKowen, IV (LSB No. 7566)
STRAIN, DENNIS & BATES, L.L.P.
318 St. Charles Street
Baton Rouge, Louisiana 70802
Phone: (225) 343-0100
Fax: (225) 343-0344

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum in Opposition to Motion for Summary Judgment was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

Baton Rouge, Louisiana, this 9th day of October, 2007.

/s/ Thomas C. McKowen, IV
Thomas C. McKowen, IV

H:\enTerra\Memo in Opposition to MSJ.doc