MINUTE ENTRY
KNOWLES, M.J.
MARCH 7, 2008

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ENTERRA ENERGY, LLC | CIVIL ACTION |
| VERSUS | NO. 06-9217 c/w 07-0409 |
| WADI PETROLEUM, INC. AND BRAMMER ENGINEERING, INC. | SECTION "C" (3) |

Defendants' Motion to Compel #54 came on for hearing before the undersigned Magistrate Judge. Present were Keith B. Hall on behalf of plaintiff and Loulan Joseph Pitre and Phillip J. Antis, Jr. on behalf of defendants. Following the hearing, the matter was taken under advisement. For reasons stated below, Defendants' Motion to Compel #54 is GRANTED IN PART and DENIED IN PART, all as more specifically set forth in this Court's orders enumerated below.

BACKGROUND

Some discussion of the background of this case is necessary to determine whether the discovery sought may lead to the discovery of admissible evidence. On October 30, 2007, plaintiff, Enterra Energy, LLC ("Enterra"), filed the captioned case against Wadi Petroleum, Inc. ("Wadi") and Brammer Engineering, Inc. ("Brammer"). Each of the consolidated proceedings involve a separate oil well, drilled pursuant to a separate joint operating agreement (JOA) and Enterra's right to participate in the profits of the wells, to wit: First, State Lease No 18076 #2 ("SL 18076 #2")/Bayou Perot Prospect JOA dated 10-21-04/Case No. 06-9217; and Second, Louisiana Delta Farms #2 ("LDF #2")/ Prospect South JOA dated 2-8-06/Consol. Case No. 07-

1

MJSTAR(00:13)

0409.  Plaintiff and the defendants are parties to the two Joint Operating Agreements for the exploration and development of certain oil and gas leases which cover the aforesaid wells. Wadi is the operator named in the JOA's; Brammer is named as Wadi's agent operator; and Enterra is one of several non-operating parties.

Enterra alleges that it was wrongfully declared a non-consenting party in both wells and, as a result, wrongfully deprived of revenues from those wells.  Both Wadi and Brammer deny any wrongdoing and counterclaimed alleging that, under the applicable provisions of the two JOA's, Enterra was in non-consent status and thus subject to a 500% penalty on those wells. Wadi and Brammer seek dismissal of the plaintiff's claims and the following declaratory and mandatory injunctive relief:  (1) a declaration that Enterra was in non-consent status as to both wells (SL 18076 #2 and LDF #2); (2) a declaration that Enterra has relinquished all of its rights in well no. LDF #2 because it failed to participate in that "Initial Well;" (3) a declaration that Enterra agreed to assign 15% of its interest in SL 18076 #2 to Wadi and mandatory injunction commanding specific performance of the aforesaid oral agreement effecting the assignment of 15% of Enterra's interest in SL18076 #2.[1]

Both plaintiff and the defendants filed cross-motions for summary judgment early on in the proceedings and both were dismissed without prejudice to refile same at a later date.[2] Defendants recently re-filed a Second Motion for Summary Judgment as to all claims,[3] which

---

[1] *See* Defendants' Motion for Summary Judgment filed February 19, 2008 [Doc. # 61].

[2] See Minute Entry Order dated October 29, 2007 (referencing plaintiff's and defendants' Cross Motions for Summary Judgment (Doc. ## 28 and 42) [Doc. # 52].

[3] *See* Defendants' Motion for Summary Judgment filed February 19, 2008 [Doc. # 61].

2

Enterra opposed.[4]

Defendant argues that, because of Enterra's non-participation in LDF #2, it has relinquished all rights with respect to that well. Defendant contends that LDF #2 was "deemed to be the 'Initial Well' for the Prospect 87 South JOA" and therefore also qualifies as an "Obligation Well" under the terms of the applicable JOA . Defendants argue that Enterra previously admitted as much – *i.e.*, that, as the "Initial Well," LDF #2 is a mandatory obligation pursuant to the JOA.[5]

Defendants also contend that, pursuant to the operative JOA, Enterra is in "non-consent" as to Well No. SL18076 #2. Defendants highlight "cash call" correspondence and argue that Enterra failed to pay overdue invoices before that well was spudded on September 12, 2006. Defendants note that: (1) Enterra's check no. 4691 for $146,208.00 received by Wadi and presented for payment by Brammer on September 14, 2006 was applied to amounts for which Enterra was in default (not the amount due pursuant to drilling well no. SL 18076 #2); and (2) Enterra's check no. 4692 for $356,876.04 (received by Wadi and presented by Brammer first on September 14, 2006 and then again on September 22, 2006) "bounced twice for insufficient funds." Defendants emphasize that neither Wadi nor Brammer agreed to forbear and hold Enterra's draft until it could transfer funds from another account.[6]

Finally, the defendants argue that there is no issue of material fact that Enterra agreed to release 15% of its interest in Well No. SL 18076 #2. In support of its position, defendants cite

---

[4]*See* Enterra's Response filed February 26, 2008 [Doc. #67].

[5]Defendant's Memorandum in Support of Summary Judgment at p. 16 (citing Enterra's prior memorandum in support of its motion for summary judgment (Doc. #42-2) [Doc. #61]

[6]*Id.* at pp. 6-13 ([Doc. #61].

3

the following: (1) telephone negotiations by and between Wadi's Vice-President (Kevin B. Dice) and Enterra's Bryan Rose which followed the defendants' September 1, 2006 cash call for full payment on Well No. SL 18076 #2; (2) Rose's September 11, 2006 oral confirmation to Mr. Dice that Enterra would reduce its participation in well no. SL 18076 #2 from 25% to 10% thereby making 15% available to other parties; (3) Rose's agreement to complete the written assignment of Enterra's interest reflecting the aforesaid oral agreement to reduce its participation to 10%; (4) Wadi's distribution of the relinquished 15% interest to other parties via September 21, 2006 Letter of Intent; and (5) Enterra's own claim that it sent payment for advanced costs of well no. SL 18076 #2 – *i.e.*, check no. 4691 in the amount of $146,208.00 *which was 10% of the advanced costs*.[7]

Enterra responded to the defendants' motion for summary judgment attaching a copy of the Bayou Perot JOA (which is substantially identical to the Bayou Prospect JOA).  Plaintiff argued that the primary disputes involve purely legal determinations.  With respect to LDF #2, plaintiff contends that it is not an "Obligation Well" under the terms of the applicable JOA and thus it has not relinquished all rights in that well.[8]  Moreover, it submits that the terms "consent" and "non-consent" cannot apply with respect to LDF #2 (an "Initial Well"), considering that the parties participation in same is mandatory.[9]

Secondly, Enterra contends that the 500% penalty does not apply to SL 18076 #2.  With

---

[7]*Id.* at pp. 13-15 (Doc. #61)

[8]Enterra's Response filed February 26, 2008 at p. 6-7 [Doc. #67].

[9]*Id.* at p. 8 (noting that Wadi has apparently abandoned its argument that Article XV(H) of the JOA applies to an Initial Well, such as LDF #2 and thus Wadi is not entitle to declaratory relief that a 500% penalty applies) [Doc. #67].

respect to that well, plaintiff submits that it is undisputed that Enterra paid the costs in full by September 26, 2006, which was prior to the 30 day period within which a party must pay the subject invoiced costs under the terms of the JOA.[10]  Plaintiff further highlights that the provision of the JOA which the defendants invoke is inapplicable in light of the undisputed fact that SL 18076 #2 is a Replacement Well (as opposed to a Proposed Operation Well).  In any event, Enterra submits that it is clear that, well prior to both the start of drilling operations on Well No. SL 18076 #2 and prior to passage of 30 days from its receipt of the invoice at issue, Enterra mailed a check that cleared for the full invoice amount on that well (SL 18076 #2).[11]  In sum, plaintiff submits that the 500% non-consent penalty does not apply as to SL 18076 #2 because Enterra's payment with respect to same was timely under the terms of the applicable JOA.[12]

Finally, Enterra counters that the alleged *oral* agreement to reduce its participation under the Bayou Perot JOA by 15% *is not enforceable as a matter of law.* In this regard, plaintiff cites La. Civ. Code arts. 1839, 2240 and La. Rev. Stat. 31:18 for the proposition that, to be enforceable, agreements with respect to mineral rights (incorporeal immovables) must be *in writing.*[13]

Pursuant to a March 5, 2008 hearing, the district judge denied Defendants' Motion for

---

[10]*Id*. at p.10 [Doc. #67].

[11]*Id*. at pp. 11-12 [Doc. #67].

[12]*Id.*

[13]*Id*. at p. 14 [Doc. #67].

Summary Judgment.[14]

## DEFENDANTS' MOTION TO COMPEL

Defendants, Wadi and Brammer, seek an order directing Enterra to more fully and completely respond to certain items of discovery requested via Defendants' Second Set of Discovery Requests. Enterra objected and did not provide Responses to Interrogatory Nos. 19, 20, 22, 23 and 24 and Requests for Production Nos. 15, 16, 19, 21, 22, 23 and 24. In addition, Enterra also objected to Requests for Production Nos, 13, 14, 17, 18 and 20 but promised documents responsive to those requests.

Defendants contend that the discovery sought is relevant to various claims and defenses and group the requests into four general categories, to wit: (1) Requests regarding investors who purchased shares of wells drilled in the prospects at issue, communications with those investors and the amounts of such investments [Interrogatory No. 19/RFP 16]; (2) Enterra's communications and other marketing efforts to sell interests in the prospects and its legal authorization to market and sell such interests [Interrogatory Nos. 20, 22, 23/RFP 14, 15, 17, 18, 20, 21, 22, 23]; (3) Prior legal actions against Enterra, David Rose and Brian Rose [Interrogatory No. 24/RFP 19]; and (4) Enterra's and/or David Rose or Brian Rose's participation in other agreements pertaining to drilling of oil and gas [RFP No. 24].

The thrust of plaintiff's opposition is that the first round of written discovery was thorough and omitted little, if anything, related to the issues in dispute. Enterra argues that this second round of discovery appears to be aimed at subjects other than issues in dispute in this litigation. Plaintiff highlights that the issues in this case include the proper interpretation of the

---

[14]Minute Entry dated March 5, 2008 [Doc. #76].

JOA's and whether Enterra's payment of certain expenses was timely. This second barrage of discovery seeks information which, in plaintiff's view, is not within the scope of discovery. Enterra submits that the discovery requests at issue are more appropriately broken down into two broad categories: (1) its record of complying with securities regulations in its sales and marketing to investors and (2) confidential commercially sensitive information regarding Enterra's investors neither of which is even marginally relevant to the issues joined.

## ANALYSIS

The Court is persuaded that the plaintiff's objections as to the scope of the discovery at issue should be SUSTAINED in large part. The defendants' second written discovery foray delves into matters which have no bearing on the alleged wrongful conduct/breach in this *civil* contractual matter. The undersigned has determined that the breadth of the requests launched in the twilight of discovery is more closely analogous to "a wild goose chase" than a "fishing expedition."

Fed. R. Civ. P. 26(b) provides in pertinent part:

(b) DISCOVERY SCOPE AND LIMITS
   (1) Scope in General.  Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense -- including the existence, description, nature, custody, condition, location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter....  All discovery is subject to the limitations imposed by Rule 26(b)(2)( C ).

The Court has carefully considered the defendants' reply which emphasizes that it only recently learned of David Rose's January 23, 2008 Federal Grand Jury indictment on twenty-one

counts of fraud involving two well development projects promoted by Enterra,[15] neither of which are at issue in this case. The undersigned further notes that there has been no attempt to narrow the requests to have them relate to the particular JOA form agreement involved in this case, the contract provisions in dispute or the two wells at issue in these consolidated proceedings. The undersigned has also taken into consideration the defendant's business model and that the search for investors may yield impeachment evidence. However, discovery has limits and, when it comes to investors, the probe should go no farther than the two subject wells. The Court has limited the requests accordingly, as set forth more specifically below. With few exceptions,[16] the Court has largely limited the second round of discovery to documents and information relating to the subject two wells. Documents and information regarding investors/investments in the prospects at issue (*the subject two wells*) plus information regarding legal actions pending against the Roses or Enterra will suffice insofar as the defendants attempt to light shed on the issue raised regarding Enterra's ability to pay its participating share at the appropriate time.[17] Let there be no mistake, the undersigned expresses no opinion on the admissibility of any evidence (including this latest haul); that is a matter for the district judge to determine at or

---

[15]Defendants explain that the indictment charges that David Rose defrauded investors by informing them that funds would go toward drilling wells, but that he used investors' funds for numerous purposes other than well development, including paying Enterra's employees' salaries and bonuses, making cash withdrawals, paying legal fees and other expenditures for his own benefit or gain. The indictment further charges that Rose made false and fraudulent representations to investors that Enterra had entered joint ventures and partnerships with major oil and gas companies. The indictment seeks return the return of $6,631,255.00, representing the ill-gotten gains generated by the charged offenses.

[16]*See* INT. No. 19 and RFP Nos. 19, 24, discussed *infra* at Items 9 and 10 and p. 10, and which discovery requests are obviously aimed at amassing either impeachment and/or evidence of the plaintiff's sophistication and familiarity with JOA's and concomitant drilling operations).

[17]*See* Discussion of Background, *supra*, at p.3.

before the bench trial in this case, which is set to commence on April 28, 2008.

For all of the foregoing reasons, including the late stage of these consolidated proceedings and that the nub of the dispute between Enterra and the subject well operators (Wadi and Brammer) concerns contractual interpretation and related mixed questions of law and fact, the Court rules herein below as follows:

**IT IS ORDERED** that the Defendants' Motion to Compel #54 is GRANTED IN PART, all as more specifically set forth below :

(1) As to **RFP No. 21** (seeking copies of *all* filing or requests required by *any* state or federal law... made by you in connection with your authorization to market or sell interests in *any* well), and **RFP No. 22** (seeking copies of *all* authorizations**), RFP No. 23** (seeking copies of *all* registrations), **on or before March 14, 2008,** plaintiff shall supplement by providing copies of filings, requests, authorizations and registrations required by law made by Enterra *but only with respect to the subject two wells*.

(2) As to **INT No. 21** (seeking a list of names of *all* agents....engaged in the marketing or sale of interests in *any* well)**, on or before March 14, 2008,** plaintiff shall supplement by providing a list of the names of agents and/or employees, *but only those engaged in the marketing or sale of interests in the subject two wells*.

(3) As to **RFP No. 13** (seeking production of all promotional materials and sales packages), **on or before March 14, 2008**, plaintiff shall supplement by providing copies of same *but only with respect to the subject two wells*.

(4) As to **RFP No. 14** (seeking production of all documents, correspondence or communications relating to the marketing and/or sale of interest in any well in Bayou Perot

Prospect and/or Prospect 87 South), **on or before March 14, 2008**, plaintiff shall supplement by providing copies of non-privileged documents, correspondence and/or communications *but only relating to the purchase and sale of interest in the subject two wells.*

(5) As to **RFP No. 15** (seeking all internet and web based advertisements) and **RFP No. 16 (**seeking copies of all documents, correspondence or other communications between Enterra and any person who actually purchased any interest), **on or before March 14, 2008**, plaintiff shall supplement by providing *only those advertisements relating to the subject two wells*.

(6) As to **RFP. No. 17 (**seeking copies of Enterra's entire file re marketing /sale of interests not limited to subject two wells), **on or before March 14, 2008**, plaintiff shall supplement by providing *only those documents relating to the marketing/sale of interests in the subject two wells*.

(7) As to **RFP No. 18** (seeking documents related to instances of any attempts to sell interests in *any well* in  Jefferson or Lafourche Parishes, Louisiana) and **RFP No. 20** (seeking production of all correspondence or other communication between you and any other person in connection with the marketing or sale of interests in any well), **on or before March 14, 2008**, plaintiff shall supplement by providing said documents *but only with respect to the subject two wells.*

(8) As to **INT No. 19 (**seeking  information regarding *all of Enterra's investors* including a profile of their investment, their names, their contact info, the number of shares bought, how much they paid....), **on or before March 14, 2008**, plaintiff shall supplement by providing  **a list stating only the names of/last known contact information/investment amount** *but only as to those Enterra investors who actually purchased shares in the subject two wells.*

(9) As to **RFP No. 19/INT. No. 24** (seeking production of all documents, correspondence or other communications relating to any civil or criminal proceeding...), **on or before March 14, 2008**, plaintiff shall supplement by providing a list setting forth the caption of such cases filed on or after January 1, 1995.  The caption should include the parties names, the suit number and the court/jurisdiction.  In all other respects, plaintiff's motion to compel is denied as to RFP No. 19 and INT. 24.

(10) As to **RFP No. 24** (seeking copies of all exploration/participation letter agreements and joint operating agreements  for the drilling of oil and gas wells Enterra has participated in since January 1, 1995 including correspondence between Enterra and the prospect generators and operators), **on or before March 14, 2008**, plaintiff shall supplement by providing copies of all "Joint Operating Agreements" and exploration/participation letter agreements *regarding the drilling and operation of wells located within the State of Louisiana.* The Court considers the additional geographic limitation on the scope of this request reasonable at this late stage of the proceedings.

**IT IS FURTHER ORDERED** that Defendants' Motion to Compel #54  is DENIED as to the following discovery requests, to wit:

(1) As to **INT No. 20** (seeking a narrative regarding efforts to market/sell interests in any well), the information sought is **duplicative of RFP Nos. 13,14, 15, 16, 17, 18  and 20** in pertinent part; otherwise, the request is overly broad, unduly burdensome and not reasonably related to any claim or issue in this case and therefore denied *in toto*.

(2) As to  **INT No. 22** (seeking a list all geographic areas where Enterra and its potential or actual investors  were located), the information sought is not reasonably related to any issue in

this case and therefore it is denied *in toto*.

     (3) As to **INT No. 23** (seeking a narrative account detailing instances in which Enterra has sold or marketed to any investors interests in any well in Jefferson or Lafourche, including the name and location of the well, well operator and the names and addresses of investors), the information sought is **duplicative of INT. No. 20 and RFP Nos. 18 and 20** in pertinent part; otherwise, the request is overly broad, unduly burdensome and not reasonably related to any claim or issue in this case and therefore denied *in toto*.

     **IT IS FURTHER ORDERED** that with respect to the aforesaid supplemental discovery, the plaintiff has made the requisite showing that protection is warranted particularly with respect to the confidential, commercially-sensitive investor/investment information; therefore, all such court-ordered discovery shall be produced subject to a protective order prohibiting its disclosure beyond the bounds of the captioned consolidated proceedings.

                                                   **DANIEL E. KNOWLES, III**
                                                   **UNITED STATES MAGISTRATE JUDGE**