UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ENTERRA ENERGY, LLC | CIVIL ACTION |
| VERSUS | NO:    06-9217<br>c/w 07-0409 |
| WADI PETROLEUM, INC. ET AL | SECTION: "C" (3) |

### ORDER AND REASONS

Before the Court is plaintiff's Motion for Summary Judgment. Rec. Doc. 84. Plaintiff enTerra Energy LLC ("enTerra") seeks summary judgment regarding its status as to two separate wells, State Lease 18076 #2 ("SL #2") and Louisiana Delta Farms #2 ("LDF # 2"). EnTerra, a non-operating party, claims that it was wrongfully declared a "non-consenting" party in both wells and as a result has been deprived of income from those wells, and was wrongfully subject to 500% penalties. Defendants Wadi Petroleum and Brammer Engineering,[1] the operator and agent-operator of the wells respectively, deny these claims. Based on the oral arguments and memoranda by both parties, the record, and the law, this Court GRANTS IN PART, DENIES IN PART plaintiff's motion for the reasons below.

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242,

---

[1] The defendants hereinafter are collectively referred to as "Wadi."

1

247-48 (1986); *see also, Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir.1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Hopper v. Frank*, 16 F.3d 92 (5th Cir.1994); *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir.1992).

### **SL # 2**

Plaintiff seeks summary judgment as to its claims that enTerra is a) not subject to penalties for SL#2; b) not in non-consent status for SL#2; and c) entitled to a 10% participation interest in SL#2. Plaintiff also seeks dismissal of Wadi's counterclaims regarding SL#2. Plaintiff EnTerra argues that it timely paid costs for the SL #2 well and therefore was not in "non-consent" status. First, enTerra claims it was timely because it paid the invoiced cost for SL#2 within 10 days of receipt. Second, even if Wadi improperly imputed the payment to existing debt for a prior well - contrary to La. C. C. Art. 1864 - by September 26, enTerra claims it was paid in full as to both wells

within the 30 day deadline.

Wadi lists an extensive period of payment delinquency by enTerra. For example, a February 28, 2006 bill for costs of drilling State Lease # 18076 #1 ("SL#1"), a prior well, also included costs for which enTerra was delinquent. According to Wadi, to be a consenting party in SL#2, enTerra should have paid both the advanced costs of SL#2 and all amounts for which enTerra was in default for SL#1 before the SL#2 operation commenced.

The Court finds the following facts. On March 30, 2006, Brammer notified enTerra by certified mail, return receipt requested, that pursuant to the "Bayou Perot Prospect" Joint Operating Agreement (JOA), Brammer had the right to place enTerra in non-consent status if full payment for outstanding costs associated with SL#1, a prior well, were not paid in full in 10 days. Rec. Doc. 89 Ex. B. On August 25, 2006, enTerra, along with other non-operating parties, were notified of a proposal to dig a replacement well, SL#2. *Id*. at Ex. C. EnTerra elected to participate on August 30, 2006. *Id.* In early September 2006, Wadi asked enTerra to pay $146,208.40 in anticipated costs on SL#2, and for $356, 876.04 in amounts allegedly past due on SL#1. EnTerra mailed two checks to Wadi on September 13, one for $146,208, a figure that corresponds to 10% of the estimated advance costs for SL # 2, and one for $356,876.04, the amount which enTerra was past due 60 days or more for the prior well. This latter check bounced twice, after attempted deposits on September 14 and 22, 2006. On September 22, Brammer notified enTerra that because of enTerra's failure to pay the full amount due pursuant to the outstanding invoices, it was deemed in non-consent status for SL #2. On September 26, enTerra wired Wadi $356, 876.04 to cover the bounced check.

The "Bayou Perot Prospect" JOA governs the SL # 2 well. Art. XV(H) details the procedure for when a delinquent party can be deemed in default. Art. XV(H) provides that if a non-operating

3

party fails to pay its outstanding balance for 30 days, the

> Operator may notify the affected party of its default by certified mail, return receipt requested, and if such party fails to cure the default within ten (10) days from the date of receipt of Operator's notice, by payment in full of the invoices for operating costs which have been due for more than thirty (30) days, at Operator's election, the affected party shall be deemed in non-consent status and for so long as the affected party remains in default they shall have no further access to the Contract Area or information obtained in connection with operations hereunder and shall not be entitled to vote on any matter hereunder, as long as the invoices remain unpaid.

In this case, Wadi completed the first step of the default procedure under Art. XV(H) in March 2006. Wadi did not actually take the second step of deeming enTerra to be in non-consent as to SL#2 until September 22, 2006, after Wadi had already solicited funds for SL#2 and after the SL#2 operation had commenced but before the well began to produce on October 11, 2008. Therefore, a genuine issue of material fact remains regarding whether Wadi properly deemed enTerra to be a non-consenting party as to SL#2. The Court DENIES plaintiff's motion for summary judgment as to SL#2.

**LDF # 2:**

Plaintiff seeks summary judgment as to its claims that enTerra is a) not subject to penalties for LDF#2; b) not in non-consent status for LDF#2; and c) that enTerra has not lost its rights to participate in wells drilled pursuant to Prospect 87 South JOA. Plaintiff also seeks dismissal of Wadi's counterclaims regarding LDF#2. Plaintiff contends that LDF #2 is not an "obligation well" under the terms of the applicable JOA and thus it has not relinquished all rights in that well. Moreover, it submits that the terms "consent" and "non-consent" cannot apply with respect to LDF

# 2 (an "initial well"), considering that the parties participation in same is mandatory.

Defendant argues that because of Enterra's non-participation in LDF # 2, it has relinquished all rights with respect to that well. Defendant contends that LDF # 2 is an "initial well," which under the governing JOA also qualifies as an "obligation well" under the terms of the Art. XV(D). Wadi argues that the purpose of the JOA is to share the drilling risk among multiple parties. If a non-operating party is allowed to participate despite its delinquencies, it would undermine the purpose of the JOA. Therefore, Wadi declared enTerra to be in non-consent status and subject to the penalties of Art. XV(D).

The Court finds the following facts. Brammer notified the parties in early September that it would be drilling the LDF #2. Both parties agree that LDF#2 is an initial well.[2] Brammer sent enTerra an invoice for advance costs (for $451,579.50) on September 20, 2006, stating that payment was due on October 5, 2006. Wadi sent notice by email/certified mail on September 27, 2006 to enTerra stating that advanced costs were due on October 5, and that it had not yet received a response as to whether enTerra intended to participate in the well. Operations commenced on September 28, and the well reached a total depth on October 11. EnTerra sent notice on October 12 that it wished to participate and paid the September 20, 2006 invoice on November 21, 2008. Based on these facts, the question becomes what contractual remedies or penalties are available under the JOA when a non-operating party fails to timely pay costs associated with an initial well.

The JOA is governed by Louisiana law. Rec. Doc. 84 at Ex. 2 (Art. XIV). In Louisiana, "contracts have the effect of law for the parties." La. Civ.Code art.1983. Under La. Civ.Code art.

---

[2] Both parties have written statements on the record that LDF#2 is an initial well. Rec. Doc. 28-4, Statement of Contested/Uncontested Facts at ¶11 for defendants; Rec. Doc. 42-4, Statement of Contested/Uncontested Facts at ¶4 for plaintiff.

2045: "Interpretation of a contract is the determination of the common intent of the parties." The interpretation of an unambiguous contract is an issue of law for the court to decide. *Amoco Production Co. v. Texas Meridian Resources Exploration Inc.* 180 F.3d 664, 668 (5th Cir.1999). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties intent." La. Civ.Code art.2046. "In addition, a contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight." *Texas Eastern Transmission Corp. v. Amerada Hess Corp.,* 145 F.3d 737, 741 (5th Cir.1998).

The JOA does not contain any language specifying the penalties for late payment for *an initial well*, but does contain general penalties applicable to all wells. Article VII(B) of the JOA grants Operators a lien against a Non-Operator's rights and "a security interest in [a Non-Operator's] share of oil and gas" to secure payment, including interest from late payments. Rec. Doc. 84 at Ex. 2 (Art. VII(B)). Art. VII(B) also specifically notes that Operators may sue to compel payment. *Id.* Defendants, and their expert, invoke Art. XV(D) arguing that an "initial well" is a "required well" and therefore the penalties that apply to "obligation wells" also apply to "initial wells." On its own terms, however, Art. XV(D) does not apply to "initial wells." Under the JOA, a party must participate in the costs of the "initial well." *Id.* (Art. III(B) and VI(A)). A party can not "elect" whether or not to participate in an initial well. Art. XV(D) only applies to those wells where a party may consent or elect to participate. In sub-paragraph 1, Art. XV(D) interprets and applies Art. VI.B.2 (on "subsequent operations," all of which are based on consent.) *Id.* (Art. XV(D)). The second sub-paragraph details the penalties for parties who "elect[] not to participate," again referring to consent-based operations and not initial wells. *Id.* The words of the contract are clear and

unambiguous in this regard. Nor does this result lead to an absurd certainty. The JOA clearly provides a remedy to defendants, just not the remedy defendants preferred. The Court GRANTS plaintiff's motion for summary judgment as to the LDF#2 well.

**Accordingly, this Court GRANTS IN PART, DENIES IN PART plaintiff's motion for summary judgment. (Rec.Doc. 84).**

New Orleans, Louisiana, this 2nd day of October, 2008.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE